THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE:<br><br>THE MATTER OF THE COMPLAINT OF<br>B & C SEAFOOD LLC, *AS OWNER*<br>*OF THE F/V TOOTS II* | Civil No. 18-1560 (RBK/JS) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' discovery dispute concerning a "Root Cause Analysis" report withheld by claimants Sargasso Sea, Inc. and Fairfield Maxwell Services, Ltd. (collectively, "Oleander claimants") on the ground of privilege. The Court received the Oleander claimants' letter brief [Doc. No. 46], the opposition papers of petitioner B & C Seafood LLC [Doc. No. 48] and cross-claimants Jesse and Kirk Sullivan [Doc. No. 49], the Oleander claimants' reply [Doc. No. 50], and the parties' supplemental filings [Doc. Nos. 51, 53, 54]. No oral argument was held. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. The Court has reviewed the Root Cause Analysis in camera. For the reasons to be discussed, petitioner's challenge to the Oleander claimants' assertion of privilege over the report is SUSTAINED, and the Oleander claimants' assertion that its Root Cause Analysis is privileged is OVERRULED.

1

**Background**

Petitioner B & C Seafood LLC, as owner of the F/V TOOTS II, filed this action on February 5, 2018 seeking exoneration from, or limitation of liability, for damages sustained by complainants resulting from a collision the vessel was involved in. See Compl. [Doc. No. 1]. On or about October 6, 2017, in the late evening, the F/V TOOTS II was fishing approximately sixty (60) miles off the coast of New Jersey when petitioner contends the M/V OLEANDER, a container vessel owned and operated by the Oleander complainants, collided with the F/V TOOTS II. Id. ¶ 5. At all relevant times, petitioner contends its vessel was seaworthy and fit for service in every respect. Id. ¶ 7.

Shortly after the incident, the Oleander claimants retained counsel from the law offices of Freehill Hogan & Mahar LLP ("Freehill"). See Letter, Mar. 1, 2019 [Doc. No. 46]. Freehill subsequently retained Safety Management Systems, LLC ("SMS"), an occupational safety consulting firm, to conduct an investigation and to prepare a report on a possible root cause for the incident. Id. at 2. On October 16, 2017, Roger H. Miller, a director at SMS, produced his "Root Cause Analysis" report ("RCA" or "Report") to Freehill. Id. The Oleander claimants contend the RCA Report has neither been reviewed or shared with anyone other than claimants or their counsel. Id.

On January 23, 2019, petitioner filed a letter [Doc. No. 39] with the Court writing pursuant to L. Civ. R. 37.1 to request its assistance in resolving several discovery disputes. Among the disputes were alleged deficiencies with the Oleander claimants' privilege log, and the claim that the RCA Report was privileged. See Letter at 2. Petitioner contends the Oleander claimants failed to specify a basis for the claimed privilege, and more generally, that its privilege log failed to meet the minimum standards set forth in Fed. R. Civ. P. 26(b)(5) and L. Civ. R. 34.1.

On February 11, 2019, the Court held a discovery conference and subsequently Ordered the Oleander claimants to serve a letter brief to support its privilege claim. See Scheduling Order [Doc. No. 44]. In its brief [Doc. No. 46], the Oleander claimants assert the RCA is privileged on two grounds: as (1) attorney work-product and/or (2) facts or opinions held by a non-testifying expert pursuant to Fed. R. Civ. P. 26(b)(4)(D). Letter Br. at 2-3. Claimants contend that, because SMS was retained by Freehill as a consulting expert to conduct an investigation and prepare the RCA Report when litigation was reasonably anticipated, the Report qualifies as work-product and, therefore, is non-discoverable. In support of this contention, claimants submit the affidavit of the Report's preparer, Roger H. Miller. See id., Ex. B. Miller contends he was retained by Freehill "to work as a consultant on behalf of [Oleander claimant] Fairfield Maxwell Services, Ltd." ("FMSL").

3

Id. ¶ 2. Miller further contends the RCA "was intended to assist Freehill with its evaluation of potential liability and prospective claims against the fishing vessel." Id.

Petitioner responds in opposition [Doc. No. 48] contesting the Oleander claimants' characterization of its asserted basis for preparing the RCA Report. Petitioner contends the RCA Report was prepared "for future risk mitigation" and pursuant to domestic regulations and international law, and thus, cannot qualify as attorney work-product or non-discoverable facts or opinions held by a non-testifying expert. See Opp. Br. at 1-2. More specifically, petitioner contends the Oleander claimants were obligated under the International Safety Management ("ISM") Code to generate the RCA Report. Id. Petitioner further contends Oleander claimant FMSL is the "ISM Manager" whose "function is to assure the Oleander is operated in compliance with the ISM Code," and alleges the RCA was prepared "to remain compliant with [their] ISM obligations." To support its position, petitioner argues "[l]itigation support is not among the core services identified on [SMS'] website." Id. at 3-4, Exs. A-I. Cross-claimants Jesse and Kirk Sullivan adopt and rely [Doc. No. 49] on the arguments raised by petitioner.

In their reply [Doc. No. 50], the Oleander claimants assert the RCA Report was prepared in anticipation of litigation and for no other purpose. Responding to petitioner's ISM Code argument, the Oleander claimants submit a "Vessel Deficiency Reporting Form"

4

("VDS Form") dated October 6, 2017 and contend that this document was generated to comply with the ISM Code – not the RCA Report. See Reply at 2. Counsel for claimants further contends its client previously neglected to provide it with a copy of the VDS Form, but that it has since produced copies to all parties and the Court. In light of the foregoing claim, claimants assert that petitioner's argument "that the [RCA] Report was required by, or prepared in furtherance, of the ISM Code lacks merit." Id.

After this matter was fully briefed, petitioner filed a letter with the Court seeking to supplement its prior filings. See Letter, Mar. 22, 2019 [Doc. No. 51]. Attached to the letter is "a true and accurate copy of an excerpt of the M/V OLEANDER'S October 9, 2017 deck log which states: '1500 Mr. Roger Miller on board to carry out the ISM/ISPS/MLC Annual Audits.'" Id., Ex. A. Petitioner contends this entry was made "immediately after the collision" and prior to the vessel's port call "at which Oleander's ISM compliance agency was scheduled to visit the ship." Petitioner contends this evidence conclusively establishes the RCA Report is not litigation work-product.

**Discussion**

The work-product doctrine provides qualified immunity from discovery to certain material prepared by or at the direction of an attorney in anticipation of litigation. See Fed. R. Civ. P. 26; In re Cendant Corp. Sec. Litig., 343 F.3d 658, 662 (3d Cir. 2003).

The party asserting the doctrine bears the burden of proving that a document is protected. In re Riddell Concussion Reduction Litig., C.A. No. 13-7585 (JBS/JS), 2016 WL 7108455, at *6 (D.N.J. Dec. 5, 2016) (citation omitted). To meet this burden, the "party claiming protection must demonstrate the precise manner in which a document is protected." Id. "Blanket assertions do not suffice." Id.

In order for a document to qualify as protected work-product, "it must be reasonably clear based on the surrounding facts and the nature of the materials" that the document was prepared because of anticipated litigation. Id. (quoting Reich v. Hercules, Inc., 857 F. Supp. 367, 373 (D.N.J. 1994)). Documents prepared in the ordinary course of business or created for another purpose are not protected, regardless of their utility in subsequent litigation. Id. Thus, a party seeking to invoke the work-product doctrine must prove at least the following two elements: (1) that a document was prepared because of reasonably anticipated litigation and (2) that the document "was prepared because of the prospect of litigation and for no other purpose." Id.

Whether a document was prepared in anticipation of litigation is a difficult determination. A party must show "that there existed an identifiable and specific claim of impending litigation when the materials were prepared." Id. at *7; see Rockwell Automation, Inc. v. Radwell Int'l, Inc., C.A. No. 15-5246 (RBK/JS), 2019 WL 1864198, at *3 (D.N.J. Apr. 25, 2019). "The mere involvement of an

6

attorney does not, in itself, evidence that a document was prepared in anticipation of litigation." Riddell, 2016 WL 7108455, at *7. However, a document may still be protected even though it was not prepared by an attorney. Id.; see Supernus Pharm., Inc. v. TWI Pharm., Inc., C.A. No. 15-369 (RMB/JS), 2016 WL 5339594, at *4 (D.N.J. June 21, 2016). In order to qualify as work-product the "dominant purpose" in preparing the document must be the concern about potential litigation and that concern must be objectively reasonable. Riddell, 2016 WL 7108455, at *7; see also Littlejohn v. Vivint Solar, C.A. No. 16-9446 (NLH/JS), 2018 WL 6705673, at *2 (D.N.J. Dec. 20, 2018) ("[D]ocuments are protected if their primary purpose was to assist counsel to render legal advice."); Supernus Pharm., Inc., 2016 WL 5339594, at *4 (concluding the subject material was not protected despite counsel's involvement because the primary purpose in preparing the material "was not to prepare for litigation").

At the outset, the Court finds the Oleander claimants have shown litigation was reasonably anticipated when the RCA Report was prepared. Claimants contend that, in the immediate aftermath of the collision, "it was foreseeable that the fishing vessel might seek recovery for the alleged damages [and/or] repair costs." See Doc. No. 46 at 2. Under the circumstances presented in this case, the Court agrees with claimants' assessment. Claimants "could have reasonably anticipated litigation based simply on the fact that"

7

the collision occurred. <u>JPC Merger Sub LLC v. Baker Eng'g & Risk, Consultants, Inc.</u>, C.A. No. 12-2825 (MAS), 2013 WL 3097106, at *3 (D.N.J. June 18, 2013). Thus, the Court concludes it was reasonable for the Oleander claimants to anticipate litigation at the time the RCA Report was prepared.

However, upon a detailed review of the record, submissions, and subject material, the Court finds it cannot be fairly said that the RCA Report was primarily prepared by or for claimants to prepare for litigation. Nor does the Court conclude that the "dominant purpose" for preparing the Report was to assist with litigation. While it is claimed Freehill was retained "to prepare for litigation," in reality Freehill retained SMS "to conduct an investigation and prepare a report addressing the circumstances surrounding the incident and to provide a possible root cause for the incident." Letter Br. at 2 [Doc. No. 46]. More specifically, Miller asserts in his affidavit that SMS was retained "as a consultant on behalf of" Oleander claimant FMSL, "the ship managers for the M/V OLEANDER." <u>Id.</u>, Ex. B. The record does not support the contention that Freehill retained SMS to assist it with the Oleanders claimants' anticipated litigation. Rather, the record indicates that SMS was retained primarily for the ship's manager, FMSL.

As such, the Court finds the Report was primarily prepared to serve the purpose of future risk mitigation, not litigation. <u>See</u>

In re Martin Marietta Materials, Inc., C.A. No. 10-0036, 2011 WL 13213546, at *3 (E.D. La. Apr. 15, 2011) (concluding "the Root Cause Analysis" report was not protected work-product because it was primarily prepared "to help evaluate work[-]place safety"); see also Chevron Midstream Pipelines LLC v. Setton Towing LLC, C.A. Nos. 13-2809; 13-3197, 2015 WL 65357, at *7 (E.D. La. Jan. 5, 2015). In Chevron, a vessel owned and operated by the defendant struck plaintiff's pipeline, resulting in an explosion, a fire, and at least one fatality. 2015 WL 65357 at *1. Defendants moved to compel the production of a Root Cause Analysis ("RCA") report prepared by Chevron in the aftermath of the incident. Id. The RCA was initially withheld by Chevron, in part, on a claim of attorney work-product. Id. However, after reviewing the subject material in camera, the Court concluded Chevron "failed to establish that the 'primary motivating factor' in [preparing] the RCA and related documents was, in fact, to aid in possible future litigation." Id. Rather, the record established that "while the subject RCA was conducted, in part, to aid in preparation for litigation, it was not primarily motivated by that concern." Id. at *12. Although "counsel may have sincerely desired to keep this work confidential, such a desire alone is insufficient to cloak the effort and related documentation in the work[-]product privilege." Id. The instant case is analogous to Chevron.

9

The arguments raised by the Oleander claimants are not persuasive. Contrary to claimants' contention, the mere blanket assertion that the Report was prepared in anticipation of litigation does not shield it from production. See Doc. No. 46.[1] Rather, the issue to be examined is "to [what] extent" was the Report prepared in anticipation of litigation and whether its primary or dominant purpose was to assist with litigation. Id. at 3. Further, the case law claimants rely upon is neither controlling nor analogous. See Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp., C.A. No. 15-cv-5477 (MCA)(LDW), 2019 U.S. Dist. LEXIS 17553 (D.N.J. Jan. 23, 2019) (concerning material prepared by a testifying expert); see also JPC, 2013 WL 3097106. In JPC, the plaintiff withheld two reports: (1) a report prepared to determine the cause of a crack; and (2) another report drafted at plaintiff's counsel's direction. See 2013 WL 3097106, at *3-5. Although litigation was reasonably anticipated, the court found the first report "was prepared in the ordinary course of business in order to find a solution to another problem." Id. at *4. The second report was held to be privileged, but only after evidence was presented to demonstrate its preparer "would properly be considered a non[-]testifying expert within the meaning of Rule

---

[1] The Court may disregard conclusory averments in support of a privilege assertion. Rockwell Automation, Inc. v. Radwell Int'l, Inc., C.A. No. 15-5246 (RBK/JS), 2019 WL 1864198, at *3 n.7 (D.N.J. Apr. 25, 2019).

26(b)(4)(D)." Id. The Oleander claimants presented no such evidence here. The first report in JPC which was held to be non-privileged is analogous to claimants' RCA because the evidence shows it was primarily prepared to assess the cause of a problem, and to identify corrective actions to be taken, and not to prepare for litigation. Id. ("Based on the evidence, it does not appear that the [RCA] Report was prepared because of the prospect of litigation.").

After thoroughly reviewing the document at issue, the Court finds it contains no legal analysis or advice and instead, amounts to a compilation of facts underlying the collision with proposed safety-related corrective actions to be taken. For example, the final page of the RCA Report provides recommendations and comments, which includes proposed employment actions, protocol revisions, and increased oversight measures. In addition, the final section of the Report, titled "Corrective Action," indicates that "[f]inal corrective actions [were] to be coordinated between C.M.V. Oleander Crew and FMSL Designated Person Ashore." Because FMSL is the "ship manager" and/or "ISM Manager" for the M/V OLEANDER, this excerpt suggests the RCA Report was prepared, to some degree, in compliance with the ISM Code or a similar regulation or policy. The Court's finding is further supported by the proof petitioner submits with its supplemental filing [Doc. No. 51], in which it attaches an excerpt from the M/V OLEANDER'S October 9, 2017 deck

log that indicates Roger Miller was "on board to carry out the ISM/ISPS/MLC Annual Internal Audits." This suggests that the "dominant" or "primary" purpose in having Roger Miller prepare the RCA Report was not claimants' concern for potential litigation. Notably, the Report's cover page appears to concede this point:

> The RCA Report is meant to assist Freehill in evaluating the circumstances surrounding the incident and provide a possible root cause to the incident. This report will also aid Freehill in the event of litigation that is anticipated.

Id., Ex. A. This excerpt evidences the fact that the prospect of litigation was an incidental, secondary purpose for which the RCA Report may have been employed. See In re Martin, 2011 WL 13213546, at *3 ("Although the [Root Cause Analysis] may also be helpful in preparing for litigation, it cannot be said that the document is primarily concerned with legal assistance."); see also Chevron, 2015 WL 65357, at *7 ("[T]he mere fact that a [party] anticipates litigation resulting from an incident does not automatically insulate investigative reports from discovery as work-product."). Therefore, because the Report was not primarily prepared in anticipation of litigation, the Court finds that the Oleander claimants' RCA Report is not protected work-product.

In light of this conclusion, the Oleander claimants' alternative basis of privilege fails. Pursuant to Fed. R. Civ. P. 26(b)(4)(D), a party may not discover "facts known or opinions held by an expert who has been retained or specially employed by

12

another party in anticipation of litigation." In other words, the "driving force" for retaining or employing the expert must be the anticipation of litigation. See Murray v. S. Route Maritime, S.A., C.A. No. C12-1854RSL, 2014 WL 1671581, at *1 (W.D. Wash., Apr. 28, 2014). Here, the Court finds the driving force behind retaining Roger H. Miller to prepare the Report was future risk mitigation and/or compliance with the ISM Code, or some similar regulatory scheme. Thus, the RCA Report does not qualify as facts or opinions held by a non-testifying expert under Fed. R. Civ. P. 26(b)(4)(D).

**Conclusion**

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED this 7th day of June 2019, that petitioner's challenge to the Oleander claimants' assertion of privilege as to the "Root Cause Analysis" report is sustained; and it is further

ORDERED that the Oleander claimants shall produce copies of the "Root Cause Analysis" report to all parties by **June 14, 2019.**

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge
